UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES,

    Plaintiff,

v.

DAVID RUSSELL BYFORD,

    Defendant.

Case No. 16-20240
Honorable Laurie J. Michelson

**OPINION AND ORDER DENYING DEFENDANT'S
MOTION FOR COMPASSIONATE RELEASE [47]**

    David Byford violated his conditions of supervised release by assaulting his wife. He was sentenced to a year and a day in prison. Having served only about half of that sentence, Byford now seeks compassionate release. He is understandably concerned about the dangers posed to inmates confined in close quarters during the coronavirus pandemic. Byford contends that, as a result of his hypertension and chronic obstructive pulmonary disorder (COPD), he is at risk for serious illness should he contract the coronavirus. But as the government points out, he also poses a significant risk to the community, especially his family, should he be released early. An evaluation of the relevant sentencing factors under 18 U.S.C. § 3553(a) does not support a grant of compassionate release. The motion is DENIED.

**I.**

    In 2017, Byford was sentenced to 48-months in prison after pleading guilty to being a felon in possession of a firearm arising out of a domestic dispute incident. (ECF Nos. 26, 32.) More specifically, police officers responded to a domestic violence complaint after Byford was at the residence of a woman (his wife) who had a personal protection order against him. (ECF No. 1,

PageID.4.) Officers subsequently located Byford in a nearby parking lot. Byford was in possession of a semi-automatic, 9mm pistol. (Presentence Report, ¶ 10.) At the time, Byford had prior felony convictions for assault with a dangerous weapon and domestic violence. (ECF No. 26, PageID.93.)

Byford's lengthy history of domestic violence has been summarized throughout the course of this case. (*See, e.g.*, ECF No. 28.) It is detailed again in the government's response brief. (ECF No. 50.) For instance, in late 2009, Byford slammed his then girlfriend into a truck during an argument. (ECF No. 50, PageID.192.) In July 2014, his wife's two young children ran to the neighbor's house for help. (*Id*.) When police arrived, they found Byford choking his wife while holding a knife and possessing three others. (*Id*.) This was just one of many times the police were called to the wife's residence due to domestic violence. Just a few months later, another incident occurred where Byford assaulted his wife, and the children were found hiding in a closet. (*Id*.) More incidents occurred in 2015, during which his wife obtained the PPO—ultimately culminating in the incident that formed the basis of the felon in possession charge.

On February 22, 2017, Byford was sentenced to 48-months' imprisonment and three years of supervised release. (ECF No. 32.) This was pursuant to the parties' Rule 11 plea agreement. (ECF NO. 26.) Byford's supervised release began on October 29, 2019.

Less than seven months later, on May 11, 2020, a violation report was filed. (ECF No. 33.) The report was based on Byford's April 24, 2020 arrest for misdemeanor assault. (*Id*.) This was Byford's third arrest for domestic violence in seven months. (ECF No. 50, PageID.195–196.) Byford and his pregnant wife got into an argument after he returned home from going to a liquor store rather than to Walmart, and he pushed her to the floor in the bathroom. (*Id*.) Notably, Byford's wife had obtained a PPO against him just days before this incident, but it had not yet

2

been served. (ECF No. 39, PageID.144.)[1] When Byford was advised about the PPO, he allegedly told police that he did not plan to obey it. (*Id*. at PageID.145.)

On September 3, 2020, the magistrate judge ordered Byford detained pending the supervised release violation hearing. (ECF No. 39.) At the detention hearing, "the government proffered that Byford has been involved in 13 different incidents of domestic violence, with 8 of those against his wife . . . Officers have observed bruising on Byford's wife, and on one occasion, found her with a split lip and bloody face. Children in the home have reported being terrified by Byford's assaultive conduct." (*Id*. at PageID.144.) Byford ultimately admitted the violation and was sentenced on September 11, 2020, to a year and a day in prison. (ECF No. 41.)

About half-way into his sentence, Byford now seeks compassionate release. (ECF No. 47.) He describes the near impossibility of being able to take the recommended precautions to protect against the highly contagious and deadly coronavirus. (ECF No. 47, PageID.177–178.) Byford also claims that underlying health conditions put him at increased risk of severe illness from COVID-19, including hypertension and COPD, and that the 18 U.S.C. § 3553(a) factors weigh in favor of release. (*Id*. at 178, 182–183.) The government opposes the request, arguing that while Byford's underlying medical conditions qualify as extraordinary and compelling reasons, his release would be inconsistent with the § 3553(a) factors. (ECF No. 50.) The parties' positions are adequately briefed and the motion can be decided without further argument. E.D. Mich. LR 7.1(f).

## II.

A district court generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). One exception to this rule is compassionate release. Where a

---

[1] The government's response details numerous additional incidents of domestic violence (ECF No. 50, PageID.195–196), but no violation report was issued based upon them.

defendant has exhausted his administrative remedies or waited 30 days after the warden's receipt of a compassionate release request, a district court may reduce a defendant's sentence if the court finds that "extraordinary and compelling reasons" warrant a reduction; that a reduction is "consistent with applicable policy statements issued by the Sentencing Commission" set forth in U.S.S.G. § 1B1.13; and that the § 3553(a) factors, to the extent they apply, support a reduction. 18 U.S.C. § 3582(c)(1)(A). But with defendant-filed motions for release, the Court may now "skip step two of the § 3582(c)(1)(A) inquiry," meaning it need not consider § 1B1.13 when ruling on those motions. *United States v. Jones*, 980 F.3d 1098, 1111 (6th Cir. 2020). "And, in the absence of an applicable policy statement for inmate-filed compassionate-release motions, district courts have discretion to define 'extraordinary and compelling' on their own initiative." *Id*. The Sixth Circuit has also clarified that "district courts may deny compassionate-release motions when any of the . . . prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others." *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021).

**A.**

The statutory exhaustion requirement is mandatory. *See United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020). Byford advises that he submitted a request to the warden for compassionate release on December 17, 2020, which was denied on January 16, 2021. (ECF No. 47, PageID.175.) The government acknowledges that Byford has exhausted his administrative remedies. (ECF No. 50, PageID.206.)

**B.**

Byford must demonstrate "extraordinary and compelling reasons" to justify his early release.

Byford's focus is being detained in the close quarters of a federal prison facility during the coronavirus pandemic while suffering from certain underlying medical conditions. At the time of Byford's sentencing, he "denied any serious or chronic illnesses in the last ten years, with the exception of a car accident in July 2013, in which he suffered several herniated discs in his back and neck." (Presentence Report, ¶ 48.) More recently, though, he has been diagnosed with hypertension and COPD. (ECF No. 47, PageID.178; ECF No. 50, PageID.207; ECF No. 51-5.) According to the Centers for Disease Control and Prevention, the COPD puts Byford at increased risk for severe illness from COVID-19 while the hypertension may put him at such risk. CDC, *People with Certain Medical Conditions,* https://perma.cc/2TBF-TKTB. Since Byford has served about 50 percent of his sentence, is in the process of being transferred to a facility with a number of inmates and staff presently positive for COVID-19 (ECF No. 47, PageID.177), and the "government agrees that Byford's circumstances qualify as 'extraordinary and compelling reasons'" (ECF No. 50, PageID.208), the Court will find this requirement satisfied.

### C.

The same cannot be said, however, for the evaluation of the § 3553(a) factors, which the Court has already done twice in prior proceedings: at the sentencing for the underlying offense and for the supervised release violation. *See United States v. Ruffin*, 978 F.3d 1000, 1008–09 (6th Cir. 2020) ("We have repeatedly recognized that district courts may deny relief under the § 3553(a) factors even if 'extraordinary and compelling reasons would otherwise justify relief.'").

Not all the factors completely cut against release. As part of this case Byford has received some treatment for his substance abuse, anger management, and mental health issues. Byford advises that "he did not receive mental health counseling or effective treatment while inside the Bureau of Prisons" and that he likely "has better access to such services through the Probation

5

Department" which he could obtain if released now. (ECF No. 47, PageID.183.) Byford's lack of treatment during his time with the BOP is unfortunate, but only adds to the concern about the protection of the public.

And those concerns are dispositive here. Byford is a serial domestic abuser. (*See* ECF No. 50.) This permeates his history and characteristics and the nature and circumstances of his underlying offenses. He was convicted of misdemeanor domestic violence in 2009; felony assault with a dangerous weapon in September 2014; domestic violence (third offense) in November 2014; and then in 2015, the original state charges—for felony aggravated stalking, felony domestic violence (third offense), and felony weapons—became the federal conviction for felon in possession. The supervised release violation also involved assaulting his wife. He has inflicted significant harm and pain with his hands alone, but he has also been armed with knives and a firearm, the latter of which he illegally possessed after being convicted of a felony. He has terrified and terrorized the women in his life and their children. Prior probation and short jail sentences have not deterred Byford's conduct nor, apparently, did the longer 48-month prison sentence. He has violated personal protection orders, state court probation conditions, and federal court supervised release conditions. Most recently, he had three disciplinary incidents in prison for fighting. (ECF No. 50-2.) There has been no deterrence or respect for the law and the Court has no confidence that Byford would comply with release conditions now, including any necessary COVID-19 protocols.

Throughout the course of this case, the Court has expressed its concern for the safety of Byford's wife and children. Byford remains a danger to them, and the community at large. When considering Byford's history and characteristics and the nature and circumstances of the offense, as well as the need to promote respect for the law and to provide adequate deterrence, just

6

punishment, and protection of the public, compassionate release is not warranted. Byford's motion is DENIED.

IT IS SO ORDERED.

Dated: March 11, 2021

s/Laurie J. Michelson<br>
LAURIE J. MICHELSON<br>
UNITED STATES DISTRICT JUDGE